467 A.2d 794

STEVENS & KENDALL CO., INC., et al.

v.

Robert A. HEADLEE.

No. 18, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Nov. 8, 1983.

David L. Terzian, Bethesda, with whom were James L. Baer, and Beckett, Cromwell & Myers, P.A., Bethesda, on the brief, for appellants.

Shelly E. Mintz, Hyattsville, with whom were Walter E. Laake, Jr., and Joseph, Greenwald & Laake, Hyattsville, on the brief, for appellee.

Argued before LISS, BISHOP and BLOOM, JJ.

LISS, Judge.

On May 14, 1982, Robert A. Headlee, the appellee herein, filed a declaration in the Circuit Court for Montgomery County, alleging a debt-confessed judgment owed by the appellants, Stevens & Kendall Co., Inc., a Maryland corporation, and Kay N. Kendall, to the appellee. The allegations in the declaration were supported by an attached note and affidavit.

On May 28, 1982, the appellants responded to the appellee's declaration with an application to vacate the confessed judgment and to quash the attachment. The trial court quashed the attachment on the same date and set the matter for hearing. On July 1, 1982, the appellants renewed their

application to vacate and requested a hearing. A supporting memorandum was thereafter filed.

After a full evidentiary hearing on November 12, 1982, the trial court reduced the amount of the judgment (previously entered by confession) by the amount of $9,004.75. The appellants then noted this appeal, asking this Court to consider whether the circuit court abused its discretion by failing to strike the whole of the judgment entered against the appellants and by failing to permit the appellants to adduce evidence to support their claim of misrepresentation and breach of warranty in their defense on the merits of the case.

On January 20, 1982, appellant Stevens & Kendall Co., Inc., and the appellee entered into an agreement for the sale and purchase of R.A.H. Enterprises Corporation, also referred to as R.A.H. Enterprises, Inc., a Maryland corporation engaged in the business of operating an automotive service station under the name of Bel Pre Mobil in Silver Spring, Montgomery County, Maryland. The agreement between the parties included, *inter alia,* the following pertinent provisions:

7. This Agreement shall be contingent upon STEVENS & KENDALL CO., INC'S., obtaining the necessary approval of Mobil Oil Corporation of the sale of stock herein contemplated including but not limited to Mobil Oil Corporation's written consent to the transfer of the Lease to STEVENS & KENDALL CO., INC., or to one of its controlling principals. If the aforesaid contingency is not satisfied by May 1, 1982 then this Agreement shall be null and void. Purchaser agrees to file immediately all necessary documents to obtain such approval.

8. The seller represents and warrants as follows:

* * * * * *

D) The Seller has delivered to the Buyer copies of Financial Statements all of which are true and complete and which have been prepared in accordance with generally accepted accounting principals, each of which

accurately presents the result of the company's operations for the period indicated.

E) Except to the extent reflected or reserved against in the company's balance sheet of December 31, 1981 the company as of this date has no liabilities of any nature, whether accrued, absolute, contingent (sic), or otherwise, including without limitation, tax liabilities due or to become due, except as noted above; or arising out of any transaction entered into or any state of facts existing prior to the date of these present.

*    *    *    *    *    *

L) No representations or warranties by the Seller in this Agreement contain or will contain any untrue statements of a material fact or omit or will omit to state a material fact necessary to make the statements contained therein misleading.

As part of this agreement, appellant Kay N. Kendall unconditionally guaranteed a promissory note payable by the buyer to the seller in the amount of $165,000, representing a portion of the purchase price totaling $210,000. The promissory note executed by the buyer and guarantor contained a confessed judgment provision. Settlement occurred on February 8, 1982, and on March 18, 1982, assignment of the existing lease was effectuated pursuant to paragraph 7 of the agreement.

At the hearing on the motion to vacate, appellants contended that several months after settlement they were convinced they had bought a "pig in a poke" as a result of certain misrepresentations made by the appellee to the appellants, primarily by reason of the refusal of Mobil to renew the Bel Pre station's existing lease. The trial court found as a result of the evidence offered by the appellants that they raised the three following grounds to support their motion to vacate the confessed judgment entered against them:

That the Defendant misrepresented the lease situation with Mobil Oil, that the Plaintiff failed to furnish a December 31st, 1981, financial statement, and there were

certain bills in charge which were claimed against the station of Mr. Headlee's in a total amount, according to the Plaintiff, of $9,004.75.

■ The trial court found the appellants' complaint concerning the alleged misrepresentation of Mobil's refusal to renew the lease unpersuasive. So do we. Mr. Kendall admitted on both direct and cross-examination that when he negotiated the agreement to purchase the stock of R.A.H. Enterprises, Inc., he knew the Mobil Corporation lease was to expire at the end of July, 1982. Mr. Kendall testified:

Q. Well, in the contract that you have for the purchase of this stock, before you signed that contract you knew that the lease of the premises expired on July 31st, didn't you?

A. That is correct.

Q. So you knew you were buying a five-month lease, right?

A. Correct.

Q. And you knew that the leasee [sic] of record was Kevin Headlee, right?

A. Correct.

Q. And in the contract it says that Kevin Headlee and Mr. Headlee have to get an assignment of Kevin Headlee's lease to you by May 1st, correct?

A. Correct.

The assignment of the lease was delivered prior to May 1, 1982. The appellants also argued before the trial court that the appellee had attempted to conceal from them Mobil's letter dated January 27, 1982 to Headlee in which it gave notice of its intention not to renew appellee's existing lease. This contention was demolished by paragraph 3 of the March 18, 1982 consent to the assignment of Headlee's existing lease to the appellants. The paragraph read as follows:

3. Company's consent to this assignment is expressly conditioned upon the acknowledgement by Assignor and Assignee that Mobil has given timely and sufficient notice of its intent to terminate, effective July 31, 1982, the service station lease and retail dealer contract dated Janu-

ary 29, 1979. Assignor and Assignee agreed that, as a result of Mobil's January 27, 1982, letter to Kevin Headlee, said service station lease and retail dealer contract, together with all related instruments, have not ever-greened for a new term, and, as such, will expire on July 31, 1982.

IT IS FURTHER AGREED by Mobil that said January 27, 1982, letter to Kevin Headlee shall operate only as a notice of non-renewal of the said service station lease, retail dealer contract, and related instruments, and shall not be effective as notice of non-renewal of the franchise relationship. Accordingly, it is Mobil's intent to offer a new service station lease and retail dealer contract to Assignee, according to its current lessee dealer rental program.

It is significant that Mobil made good on its expression of intent as evidenced by the fact that on July 30, 1982, appellants entered into a new lease and dealer contract with Mobil.

In *Stankovich v. Lehman,* 230 Md. 426, 432, 187 A.2d 309 (1963), the Court of Appeals stated the standard for a successful motion to strike a judgment by confession to be as follows:

> To be successful in moving to strike a judgment by confession, one must adduce evidence in support of his motion sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case . . . This is to say that if the evidence is such that persons of ordinary judgment and prudence could fairly draw different inferences from it, the controversy should not be decided as a matter of law but instead should be submitted to the trier of fact. . . .

We agree with the trial court that the evidence before it did not support a finding that the alleged misrepresentation as to the renewal of Mobil's lease amounted to a meritorious defense to the confessed judgment entered against the appellants.

■ Similarly, the alleged failure to provide the December 31, 1981 financial statement does not constitute a meritorious defense. Leaving aside the fact that the record abounds with conflicting testimony as to whether the statement was in fact supplied and discussed at the time of settlement, the appellants have supplied no factual basis for a determination that the failure to supply the statement has in any way injured the appellants. Certainly, the dereliction alleged on the part of the appellee would not justify the appellants' action in retaining possession of the business and its profits and their simultaneous refusal to pay the agreed upon purchase price. The bare assertion that the financial statement was not supplied as required by the contract between the parties, without any facts to suggest that the failure to supply it caused loss or damage to the appellants, is not sufficient to amount to a meritorious defense to the confessed judgment.

■ Finally, appellants argue that pursuant to Maryland law, proof of a setoff, however slight, entitles them to have the entire matter tried before a jury. In support of this proposition they cite *Gelzer v. Scamoni,* 238 Md. 73, 207 A.2d 655 (1965), and *J.B. Corporation v. Fowler,* 258 Md. 432, 265 A.2d 876 (1970). The Court of Appeals stated in *Fowler, supra,* at p. 436, 265 A.2d 876 [quoting from *Gelzer, supra* ]:

> It would, indeed, be a dangerous procedure to permit a confessed judgment to stand against one who has seasonably raised his claim and has a just and valid set-off against the holder of the judgment, until such time as the claim upon which the set-off is based can be reduced to judgment. The holder of the confessed judgment would be at liberty to collect his judgment, and, if, at the time the owner of the set-off obtains judgment, the former holder of the confessed judgment be financially irresponsible, the owner of the set-off might never be able to collect on his judgment.

In this case, however, the trial judge obviated the necessity to vacate the confessed judgment in order to protect the appellants from any injustice by reducing the judgment to

the full extent of the setoff allegedly due the appellants in spite of the fact that the setoff was hotly contested by the appellee. In taking this action, the trial judge, in effect, removed the issue of the setoff from the case.

The procedure adopted by the trial court was tacitly approved in *Fowler, supra,* at pp. 436–37, 265 A.2d 876, where a debtor established a setoff of $2,546.13 as a defense to a confessed judgment of $3,000. The Court held:

> There should be a final judgment entered at this time in favor of the plaintiff against the defendant for the sum that the defendant admits being due to the plaintiff, namely the difference between the $3,000.00 plaintiff claimed and the $2,546.13 credit claimed by the defendant against that sum or $453.87.

In this case the trial judge, after a full hearing, decided there was no meritorious defense to appellee's claim amounting to more than $152,000. To suggest that this matter should be held for jury trial because of appellants' claim for a setoff of $9,000 would amount to a gross inequity on the appellee. We see no abuse of discretion in the trial court's conclusion and find nothing to indicate the court was clearly erroneous in its rulings on the law and the facts.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.